# EXHIBIT A

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 02/27/2023

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 2 of 37 PageID #: 5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

In the Matter of the Application of

MICHAEL GALA,
JOSEPH JARDIN,
MICHAEL MASSUCCI, and
FRED SCHAAF,

                        Petitioners-Plaintiffs,

For a Judgment pursuant to Article 78 of the Civil
Practice Law and Rules,

            -against-

LAURA KAVANAGH, as Commissioner of the
New York City Fire Department, and the NEW
YORK CITY FIRE DEPARTMENT,

                   Respondents-Defendants.

---

Index No. _____

Assigned to Justice _____

Date Purchased: Feb. 27, 2023

**<u>VERIFIED ARTICLE 78
PETITION AND COMPLAINT</u>**

Petitioners-Plaintiffs by and through their attorneys, Walden Macht & Haran LLP, for their

hybrid verified Article 78 petition and complaint, allege the following:

### NATURE OF THE ACTION

1.     This case is about one thing: the safety of the public and valiant firefighters of the

New York City Fire Department.

2.     Large fires—which present grave risk of spreading to adjacent buildings, causing

building collapses, and killing ordinary people and first responders—require the most effective

crisis-response teams, especially Incident Commanders, who carry ultimate responsibility for

averting tragedy.

3.     Within the New York City Fire Department ("FDNY"), the Incident Commanders

for large fires are the Staff Chiefs, which comprise the Chief of Department, Chief of Operations,

Assistant Chiefs, and Deputy Assistant Chiefs.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 02/27/2023

Case 1:23-cv-01543-NRM-RER    Document 1-1    Filed 02/28/23    Page 3 of 37 PageID #: 6

4.      When any fire department, police department, or other public-safety or military organization has inadequate or inexperienced Incident Commanders, people die.

5.      As described below, LAURA KAVANAGH ("Respondent Kavanagh"),[1] as Commissioner of the FDNY, has taken a series of actions in the period between November 2022 and February 2023, which has resulted in the demotion (actual or constructive) or reassignment of at least ten Staff Chiefs, including the Chief of Department.  Most of these positions have not been filled.

6.      Respondent Kavanagh's actions have created a grave risk to the City of New York as well as firefighters across the city.  When Respondent Kavanagh's ill-conceived demotions go into effect (between March 4th and 6th), two critical problems exist:  (a) there will be no Staff Chiefs who have ever served as Incident Commanders on a 5-alarm fire; and (b) there are only four Staff Chiefs with sufficient rank, in the absence of more senior chiefs, to cover 4-alarm fires across the entire city (and it is entirely unclear whether they have served as Incident Commanders for a 4-alarm fire before).  Judicial action is required to maintain the safety of New York City residents and visitors by restoring the firefighting responsibilities of Staff Chiefs who were re-assigned.

7.      As to the merits, Respondent Kavanagh's brief tenure as FDNY Commissioner has shown what happens when a political operative is put in charge of a public-safety agency as vital as the FDNY.  Through the demotions and reassignments, as well as through other decisions antithetical to public safety, Respondent Kavanagh has abused the office of Fire Commissioner, violated the oath of office, put the public and members of the FDNY at risk, and retaliated against

---

[1] This is a hybrid petition and plenary complaint.  Commissioner Laura Kavanagh is a Respondent-Defendant but is referred to herein as "Respondent Kavanagh."

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 02/27/2023

senior staff for raising safety concerns about leadership decisions (collectively, but as described in detail below, the "Retaliation Decisions").

8. This Verified Article 78 Petition and Complaint, together with the ample evidentiary support (including an affidavit from one of the most experienced firefighting professionals in the country), seeks to end Respondent Kavanagh's campaign of internecine warfare within the FDNY by reversing and annulling the Retaliation Decisions.

## VENUE AND JURISDICTION

9. CPLR § 7804 provides that jurisdiction lies within New York State Supreme Court.

10. Pursuant to CPLR §§ 7804(b) and 506(b), venue in this proceeding lies in Kings County, in the judicial district where the Respondents-Defendants made the determinations complained of, where the material events otherwise took place, and where the principal office of the Respondents-Defendants is located.

## PARTIES

11. Petitioner-Plaintiff Michael Gala ("Petitioner Gala") has dedicated his entire professional life to protecting the people of New York City, first as a police officer, and then, for the past thirty-six years, as a firefighter. He is a highly decorated and widely respected member of the FDNY who has responded to countless life-threatening emergencies, including the terrorist attacks on September 11, 2001. His devotion to the job and his tireless work ethic allowed him to achieve the rank of Assistant Chief. Petitioner Gala has received several citations for bravery as well as numerous other honors, including the FDNY Columbia Association's Man of the Year in 2018. He is a nationally recognized authority on firefighting operations and a prolific writer and lecturer on all things fire-services related. He has taught and authored several publications on firefighting tactics and strategies. Petitioner Gala was a target of Respondent Kavanagh's

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Retaliation Decisions, including both her retributive reassignment campaign and, on February 3, 2022, being unceremoniously demoted.

12.     Petitioner-Plaintiff Joseph Jardin ("Petitioner Jardin") has served in the FDNY for thirty-seven years, dedicating much of his career to Rescue Operations. He has served as both the Chief of Safety and Chief of Fire Prevention and achieved the rank of Assistant Chief. Petitioner Jardin has a degree in Fire Protection Engineering and is an expert on fire prevention, building codes, and fire-safety standards. He served for seven years on the National Fire Protection Association's ("NFPA") Standards Council and chaired the NFPA's Guide for Structural Firefighting Using Fire Dynamics Technical Committee and the NFPA's Safety to Life Project's Building Service and Fire Protection Equipment and Residential Occupancies Technical Committees. Petitioner Jardin has received numerous awards recognizing his FDNY service and NFPA standards work. He was a target of Respondent Kavanagh's Retaliation Decisions, including both her retributive reassignment campaign and, on February 3, 2022, being unceremoniously demoted.

13.     Petitioner-Plaintiff Fred Schaaf ("Petitioner Schaaf") has served in the FDNY for over thirty years and achieved the rank of Assistant Chief. He has dedicated his entire adult life to serving the people of New York City and ensuring public safety. He has received awards for his FDNY service and bravery. In 2019, Petitioner Schaaf became the Queens Borough Commander, overseeing all FDNY operations in Queens County, the largest borough in New York City. He served in this role until Respondent Kavanagh abruptly reassigned him. Petitioner Schaaf was a target of Respondent Kavanagh's Retaliation Decisions, including both her retributive reassignment campaign and, on February 3, 2022, being unceremoniously demoted.

4

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 6 of 37 PageID #: 9

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 02/27/2023

14.    Petitioner-Plaintiff Michael Massucci ("Petitioner Massucci") has served in the FDNY for nearly thirty-three years and achieved the rank of Deputy Assistant Chief. He has dedicated his entire adult life to serving the people of New York City and ensuring public safety. He has received numerous awards for his bravery and service. Within the FDNY, Petitioner Massucci is well known for his encyclopedic institutional knowledge of the FDNY and its operations. He served as Chief of Uniformed Personnel for six years until Respondent Kavanagh reassigned him to work in the "Toolroom" under the Bureau of Operations with no clear role or responsibilities. Petitioner Massucci has been a target of Respondent Kavanagh's Retaliation Decisions and was reassigned to a job with no responsibilities. Because he also had to endure the consequences of Respondent Kavanagh's unsafe decision making, Petitioner Massucci was constructively demoted.[2]

15.    Respondent Laura Kavanagh is the 34th Fire Commissioner of the FDNY. Prior to joining the FDNY in 2014, Respondent Kavanagh worked primarily as a political operative on political campaigns and in local government, never a day as a firefighter. Respondent Kavanagh has no experience fighting fires and worked only on the civilian side of the FDNY before ascending to Commissioner.

16.    Respondent-Defendant FDNY is a department of the government of the City of New York.

---

[2] As noted elsewhere, use of the term "constructive demotion" is consistent with federal law, which analyzes constructive demotion cases in the same manner as constructive dismissal. *See*, *e.g.*, *Chanval Pellier v. Brit. Airways, Plc.*, No. 02-CV-4195, 2006 WL 132073, at *5 (E.D.N.Y. Jan. 17, 2006); *Fenney v. Dakota, Minnesota & Eastern R. Co.*, 327 F.3d 707, 717 (8th Cir. 2003).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## RELEVANT LEGAL AUTHORITIES

17.    A special proceeding under Article 78 of the CPLR is available to challenge the actions or inaction of agencies and officers of state and local government.  Under CPLR § 7803, a Court may determine, inter alia, "whether the body or officer failed to perform a duty enjoined upon it by law," and "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion."

18.    The conduct and operations of the FDNY are governed by the Regulations of the Fire Department of the City of New York ("FDNY Regulations").  The FDNY Regulations require that "Assistant Chiefs and Deputy Assistant Chiefs are appointed by the Fire Commissioner in consultation with the Chief of Department to serve as members of the Chief of Department's staff."[3]

19.    Also pursuant to the FDNY Regulations, Staff Chiefs serve, on a rotating basis, as citywide Command Chiefs.  The responsibilities of a Command Chief include "[m]andatory response on 3rd alarm."[4]  Command Chiefs also have "[d]iscretionary response to any alarm.  Staff Chiefs shall, at their discretion and compatible with their administrative function, visit the site of fires of lesser proportions than 3rd alarms to effectively evaluate Deputy Chiefs, Battalion Chiefs and Company Operations."[5]  Command Chiefs must also respond to any incident involving three or more fatalities and must respond to all "complex emergencies involving multiple deaths, the possibility of multiple deaths or where the nature of the emergency, in the opinion of the Staff

---

[3] FDNY Regulations, Chapter 5.

[4] *Id*. § 5.1.1.

[5] *Id*.

6

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Chief, requires his/her presence."[6]  Additionally, Command Chiefs must be personally involved when there is an apparatus collision or injuries to firefighters.[7]

## OVERVIEW OF INCIDENT COMMANDER CRISIS

20.     As of this filing, the FDNY had nineteen individuals who could serve as Incident Commander at 3-alarm fires or more severe ones ("Staff Chiefs").

21.     Of those, eight have been demoted (actually or constructively).  Accordingly, this leaves only eleven Incident Commanders for all 3-alarm fires city-wide.  Given that 4- and 5-alarm fires require higher-ranking officers within the Staff Chiefs, this leaves no one—not a single Staff Chief—who has experience as Incident Commander for a 5-alarm fire.  But Petitioners-Plaintiffs have learned that two other Staff Chiefs have orally requested reassignment, and one has opted for medical leave, reflecting their constructive demotions as well.  Petitioners-Plaintiffs learned that these requests were oral because the demoted Staff Chiefs did not want "to be in the papers." In total, the demotions leave only four Staff Chiefs with sufficient rank to provisionally cover 4-alarm fires in the absence of more senior chiefs, but it is entirely unclear that any of those four have experience as Incident Commanders for 4-alarm fires as of today.

22.     If this information is accurate, only eight Incident Commanders will remain, none with experience as Incident Commanders for 5-alarm fires, and one or two with 4-alarm experience.

23.     This is a terrifying prospect for public safety.  Having such a small group of Incident Commanders available to respond to serious fires is unworkable and would require prompt promotion of others with no experience as Incident Commander in such grave crisis situations.

---

[6] *Id.* §§ 5.1.3-4.

[7] *Id.* §§ 5.1.5-6.

7

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

# FACTS

### I.    Structure of the FDNY

24.    The FDNY is a vast hierarchical organization, consisting of both uniformed and civilian divisions, all under the oversight of the Fire Commissioner.

25.    The uniformed division of the FDNY—the brave women and men who risk life and limb daily to ensure public safety—handles the responsibilities traditionally associated with firefighting.

26.    The civilian branch largely provides support to the uniformed division through non-operational functions, such as legal, purchasing, inspections, and code enforcement.

27.    The Chief of Department sits atop the uniformed division and usually serves as a key advisor to the Fire Commissioner.  The Chief of Department is a "five-star" Chief, meaning five stars sit on the shoulder of his uniform.  In addition to the administrative and oversight responsibilities associated with the position, the Chief of Department is on call twenty-four hours a day, seven days a week, and responds to major emergencies throughout the five boroughs of the City of New York.

28.    Beneath the Chief of Department are three lines of operational direct reports: (1) Chief of Operations, a four-star chief, (2) Assistant Chiefs, who are three-star chiefs, and (3) Deputy Assistant Chiefs, who are two-star chiefs.  In FDNY parlance, this team is referred to as "Staff Chiefs," although "Senior Chiefs" would be more fitting.  The Staff Chiefs form, as part of their duties, the coterie of most-experienced experts of the FDNY, ensuring on an operational level that the City of New York remains safe and the FDNY operates effectively on a daily basis.

29.    The other responsibility of the Staff Chiefs—the one that is most solemn, with the most gravity, and the most serious consequences—is that they are the <u>only</u> uniformed officers in

8

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

the entire city who can serve as commanding officers (*i.e.*, Incident Commanders) for any fire that requires three alarms or more.[8] They therefore serve an indispensable role in keeping city residents and other firefighters safe, as explained below.

30.     Beneath the Staff Chiefs are the following ranks of the FDNY: (1) Deputy Chiefs, who have an eagle on their shoulders, (2) Battalion Chiefs, who have an oak leaf on their shoulders, responsible for managing a specific battalion, which includes several fire companies consolidated by geographical region, (3) Captains, with two bars on their shoulders, responsible for managing a specific fire company, which includes several firefighters, (4) Lieutenants, with one bar on their shoulders, responsible for assisting the Captain in managing the fire company, and (5) Firefighters. All promotions within these positions are based on written exams governed by the civil service system regulated and administered by the New York City Department of Citywide Administrative Services.   To be promoted above Deputy Chief, an individual must be selected by the Fire Commissioner, in consultation with the Chief of Department.[9]

31.     The FDNY uses the "alarm" system to indicate the severity of fires and the number of personnel and trucks necessary to fight them.  For each alarm, the FDNY will send four engine companies, two ladder companies, and additional special units, including additional battalion chiefs.  A 1-alarm fire is typically commanded by Battalion and Deputy Chiefs.  If the Battalion and/or Deputy Chief in charge of the fire feels the fire is expanding and additional backup is necessary, he or she will raise the alarm and an additional six companies will be sent.  As a fire increases in severity, the seniority of the commanding officer in charge of fighting the fire also increases.

---

[8] FDNY Regulations, Chapter 5.

[9] FDNY Regulations, Chapter 5.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)        INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1                                                                RECEIVED NYSCEF: 02/27/2023

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 11 of 37 PageID #: 14

32.     The Staff Chiefs serve on a rotation as Command Chiefs who are on call to respond to large fires and other incidents.  For each 2- and 3-alarm fire across the city—meaning, the alarm was raised to call in six or twelve additional companies to battle a fire alongside the originally responding six companies—the Command Chief, who is an Assistant Chief or Deputy Assistant Chief, is alerted and either monitors the situation remotely or goes to the scene.[10]  For 3-alarm fires, the Command Chief must respond to serve as onsite Incident Commander.[11]  Staff Chiefs must also respond to various other emergency incidents, including where there are fatalities or the possibility of fatalities.[12]

33.     In large fires, this role of coordinating the various battalions and companies is crucial.  In addition to extensive knowledge and experience with firefighting, the commanding officer must have the communication and leadership skills necessary to command multiple battalions at once to fight a fire that has already raged sufficiently out of control that the previous Deputy Chief needed to raise the alarm.  If the fire expands to a fourth alarm, the four-star Chief of Operations typically commands the firefighting effort, if the fire expands to a fifth alarm, the five-star Chief of Department typically takes command.  If the Chief of Department is away, the Chief of Operations covers the command at a 5-alarm fire.

34.     Currently, there are nineteen Staff Chiefs: one Chief of Department, one Chief of Operations, ten other Assistant Chiefs, and seven Deputy Assistant Chiefs.[13]  Typically, Staff

---

[10] FDNY Regulations, Chapter 5.

[11] *Id.*

[12] *Id.*

[13] Other Assistant Chiefs and Deputy Assistant Chiefs who are in the process of retiring, and are not active, are not counted here.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Chiefs serve as Incident Commanders for approximately four to six large-scale fires each year. That correlates to about 100 very serious fires each year that are two alarms or more.

35.     Each uniformed member of the FDNY swears an oath to serve and protect life and property—an oath that they take to heart and seek to live out each and every day on the job.

36.     Those who serve as Staff Chief have enormous and grave responsibilities.  It is critically important that these promotion decisions are based on experience and merit alone.  Lives depend on it.

37.     In the history of FDNY, upon information and belief, no Commissioner has demoted multiple Staff Chiefs at once.

## II.     Critical Importance of Incident Commander

38.     Experienced, effective Incident Commanders are critical for reducing fatalities among the public and first responders.

39.     For example, on June 18, 2007, the infamous Charleston, South Carolina, Sofa Super Store fire claimed the lives of nine firefighters.  An official report on the causes for the tragedy noted that when the situation worsened, "the absence of an effective overall Incident Commander and an appropriate command structure" resulted in only one of two teams being ordered to withdraw from the building.  The report concluded, "The decision . . . should have been made early enough to allow the firefighters . . . to withdraw safely.  This critical decision was not made, because there was no effective Incident Commander coordinating the operation, continually revaluating the situation, and providing overall direction."[14]

---

[14] "Firefighter Fatality Investigative Report: Sofa Super Store," at 97-99, City of Charleston, June 18, 2007, available at https://www.charleston-sc.gov/DocumentCenter/View/26695/Charleston_phase_two_report.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1                                                                         RECEIVED NYSCEF: 02/27/2023

Case 1:23-cv-01543-NRM-RER    Document 1-1    Filed 02/28/23    Page 13 of 37 PageID #: 16

40.     Similarly, an official report on a January 24, 2022 fire in Baltimore, Maryland that resulted in the deaths of three firefighters stated in part, "[t]he Incident Commanders failed to provide assignments to arriving Chiefs resulting in self-assignment. . . .  This contributed to confusion, freelancing, and compounded the lack of accountability."  The report contained multiple recommendations for increased training of Incident Commanders.[15]

41.     A similar official report on incident-response failures during a 2021 fire in Maryland, which caused a firefighter fatality, best summarizes the role of an Incident Commander:

> The demands placed on the [Incident Commander] is unmatched by any other position on the incident scene. They bear the responsibility for the personal safety of every individual on the fireground. Their job requires cognitive skills and abilities that require years and years of experience to obtain.[16]

42.     The risks posed by inexperienced Incident Commanders in emergency response situations are not confined to fires.   The 1993 law enforcement siege on the Branch Davidian compound in Waco, Texas was an operational disaster.  The U.S. Treasury Department's report on the Bureau of Alcohol, Tobacco, and Firearms' ("ATF") handling of the raid was scathing, citing "disturbing evidence of flawed decision making" and "supervisory failures."[17]  In particular, the report noted that neither of the two ATF agents in charge of the raid—one of whom had been designated Incident Commander despite having less tactical experience than other agents—"had

---

[15] "205 S. Stricker Street," at 118, Baltimore Board of Inquiry, Sept. 13, 2022, available at https://cityservices.baltimorecity.gov/resources/LineofDutyDeathReport_205S_Stricker_Street.pdf.

[16] "After-Action Report and Improvement Plan," at 155, Frederick County, Aug. 2022, available at    https://frederickcountymd.gov/DocumentCenter/View/339823/Joshua-Laird-LODD-After-Action-Report-8-18-22----NO-PERSONAL-INFO.

[17] "Investigation of Vernon Wayne Howell aka David Koresh," at 7, Dept. of the Treasury, Bureau of Alcohol, Tobacco, and Firearms, Sept. 1993, available at https://www.policinginstitute.org/wp-content/uploads/2018/02/DOT-Report-ATF-Investigation-of-David-Koresh_Sept-1993.pdf.

12

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 02/27/2023

Case 1:23-cv-01543-NRM-RER  Document 1-1  Filed 02/28/23  Page 14 of 37 PageID #: 17

any experience remotely comparable to the raid attempted."[18]  The report added, "As a result, they were ill-prepared for the command of a large-scale, high-risk assault on a large, heavily armed structure."[19]  The raid resulted in the deaths of 76 civilians, 25 of whom were children, and four ATF agents.

43.     Another key example is the horrific school shooting in Uvalde, Texas, on May 24, 2022.  The Texas House of Representatives report on the incident described "systemic failures and egregiously poor decision making."[20]  A central failing of the emergency response was the chief of police's failure to assume or transfer the role of Incident Commander.  The report stated that "the lack of effective incident command is a major factor that caused other vital measures to be left undone."[21]  Despite 376 law enforcement officers responding that day, 21 children were slaughtered.[22]

44.     Put simply, when an emergency response team lacks an experienced, effective Incident Commander, innocent people die needlessly.

---

[18] *Id*. at 153, 174.

[19] *Id*. at 174.

[20] "House Investigative Committee on the Robb Elementary Shooting," at 5, Texas House of Representatives, July 17, 2022, available at https://house.texas.gov/_media/pdf/committees/reports/87interim/Robb-Elementary-Investigative-Committee-Report.pdf.

[21] *Id*. at 62-63.

[22] *Id*. at 5, 64, 76.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 15 of 37 PageID #: 18

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 02/27/2023

### III.    Appointment of Respondent Kavanagh as FDNY Commissioner

45.    On February 16, 2022, Mayor Eric Adams announced the appointment of Respondent Kavanagh as acting Commissioner of the FDNY following the retirement of former Commissioner Daniel A. Nigro, who led the department for eight years.[23]

46.    Upon becoming acting Fire Commissioner, Respondent Kavanagh was placed at the top of the FDNY hierarchy and took the reins of the largest and busiest municipal Fire Department in the United States, overseeing a $2 billion dollar budget and 17,000 members.[24]

47.    As such, Respondent Kavanagh has been tasked with ensuring that the FDNY's "main goal . . . to provide fire protection, emergency medical care, and other critical public safety services to residents and visitors in the five boroughs" is served on a daily basis.[25]

48.    Prior to joining the FDNY in 2014, Respondent Kavanagh primarily worked as a political operative on political campaigns and in local government, never a day as a firefighter. Respondent Kavanagh has no experience fighting fires and worked only on the civilian side of the FDNY before ascending to Commissioner.[26]

49.    Upon joining the FDNY in 2014, Respondent Kavanagh first served as Director of External Affairs—the press office—before being promoted to Assistant Commissioner for External Affairs a few months later.

---

[23] "End of an era: Commissioner Dan Nigro retires after half century with FDNY," ABC News, Feb. 16, 2022, available at https://abc7ny.com/dan-nigro-fdny-commissioner-daniel/11569770/.

[24]    "Laura    Kavanagh,    Fire    Commissioner,"    NYC.gov,    available    at https://www.nyc.gov/site/fdny/about/overview/leadership/fire-commissioner.page.

[25]        "FDNY    Overview,"    NYC.gov,    available    at https://www.nyc.gov/site/fdny/about/overview/overview.page.

[26]    "Laura    Kavanagh,    Fire    Commissioner,"    NYC.gov,    available    at https://www.nyc.gov/site/fdny/about/overview/leadership/fire-commissioner.page.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

Case 1:23-cv-01543-NRM-RER    Document 1-1    Filed 02/28/23    Page 16 of 37 PageID #: 19

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 02/27/2023

50.     In 2015, Respondent Kavanagh was promoted to Deputy Commissioner for Government Affairs and Special Projects, a role she kept until 2018.[27]

51.     In other words, until 2018, Respondent Kavanagh's roles were limited to politics and government, which fit with her background as a political operative.

52.     In 2018, Respondent Kavanagh was appointed First Deputy Commissioner.[28]  It was the first time her official titles expanded beyond External Affairs or Government Affairs.  She was, at the time, approximately 35 years old.

53.     On February 16, 2022, with only four years of additional experience on the civilian side of the organization, and at just 39 years of age, Respondent Kavanagh was appointed as acting Fire Commissioner.

## IV.     Respondent Kavanagh's Decision-Making Contrary to the Interests of Public Safety Put the Public and FDNY Members at Risk Daily

54.     As explained below, Respondent Kavanagh demoted (actually or constructively) eight of her most senior chiefs without cause and with no explanation.  On information and belief, three additional Staff Chiefs have acknowledged their constructive dismissals through requests for reassignment or medical leave.

55.     If these demotions take effect on March 4 and 6, as planned, the FDNY will be left with an unimaginable level of unpreparedness.  After losing eleven Staff Chiefs, the FDNY will soon be left with as few as seven Staff Chiefs who have experience serving as Incident Commander at 2- and 3-alarm fires.  There will be no one left with experience commanding a five-alarm fire;

---

[27] "Fire Commissioner Appoints New First Deputy Commissioner and Chief of Staff," NYC.gov, Jan. 31, 2018, available at https://www.nyc.gov/site/fdny/news/fa1218/fire-commissioner-appoints-new-first-deputy-commissioner-chief-staff#/0.

[28] "First female commissioner Laura Kavanagh to lead NYC fire department," AP, Oct. 28, 2022, available at https://www.usatoday.com/story/news/nation/2022/10/28/first-female-commissioner-nyc-fire-department/10622884002/.

15

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

and, one or two of the remaining Staff Chiefs may have had some prior experience serving as Incident Commander on a 4-alarm fire (it is unclear whether any do have Incident Commander experience at 4-alarm fires).

56.     Although the gravamen of this action concerns Respondent Kavanagh's very recent actions to gut the ranks of the Staff Chiefs based on their disagreements with her over matters of public safety, to humiliate them through reassignments to places like the FDNY Quartermaster and Toolroom, and to then disparage them publicly through a campaign of disinformation and slander, background on Respondent Kavanagh's mismanagement and malfeasance serves as important context.

57.     As an initial matter, Respondent Kavanagh inherited a department that was functioning at a very high level, by any objective indicator.  According to the FDNY annual report for 2020, the department has seen a significant decrease in fire-related fatalities and injuries.  For instance, in 2017, there were 73 civilian fire-related fatalities.  By 2020, those numbers had decreased to 63 civilian fire-related fatalities, a 13.7% reduction in fatalities.[29]

58.     The FDNY attributes this decrease to a number of factors, including enhanced fire safety education and outreach programs, improved technology and equipment, and better training for firefighters.

59.     An experienced professional would not seek to fix that which is unbroken.  A political operative would.

60.     Instead of concentrating on preserving and maintaining the safety of New York City residents and the firefighters within its ranks, Respondent Kavanagh focused her efforts on

---

[29] "FDNY Bureau of Fire Investigation, 2020 Annual Report," at 51, NYC.gov, available at https://www.nyc.gov/assets/fdny/downloads/pdf/about/bfi-2020-annual-report.pdf.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

"revolutionizing" the FDNY, including by repeatedly demanding undefined and unquantified "out-of-the-box thinking" by her Staff Chiefs. This ill-defined approach supplanted a focus on firefighting science, which has required, established, and clear military protocols, adherence to science and training, and expert precision. Following appointment as Acting Commissioner, Respondent Kavanagh made numerous unprecedented decisions, ungrounded in safety or best practices. Each time, the Staff Chiefs objected. These decisions included:

61.     **Self-Contained Breathing Apparatus ("SCBA") Purchasing Decision.** The SCBA is the <u>most</u> important piece of equipment that protects the men and women of the FDNY from smoke, toxic gas, and harmful particulates as they fight fires. The FDNY's SCBA equipment is at the end of its life cycle, and so the Department will soon purchase new units at a cost of $50-$100 million. Because this equipment is so critical, the FDNY created a special SCBA Committee, comprising experts in fire safety, operations, and R&D, which has been meeting for years to test and develop the next generation SCBA apparatus for the FDNY. Upon becoming commissioner, Respondent Kavanagh altered the composition of the SCBA Committee, sidelining these experts and instead putting the decision primarily in the hands of her civilian staff.

62.     **Putting an Unqualified Civilian in Charge of R&D.** Respondent Kavanagh announced to several Staff Chiefs that Research and Development, the experts who carefully study and make recommendations on safety and equipment, was being moved out of the Safety Command. Instead, it will report to a civilian in the technology segment of the organization, who will in turn report to another civilian without an R&D background.

63.     **Making Firefighter Safety a Civilian Task.** Under the normal structure, the Chief of Safety, responsible for overseeing all aspects of firefighter and public safety, would report to the Chief of Department on the uniformed side. When Respondent Kavanagh took over, however,

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 02/27/2023

she decided to have the Chief of Safety report to the civilian Commissioner's office instead of the Chief of Department.

64. **Taking Fire-Code Inspection Out of Fire Department Purview.** Respondent Kavanagh sought to reassign FDNY's fire prevention responsibilities to the NYC Department of Buildings and permit buildings to self-certify violations of their fire alarm systems. This move alarmed experienced members of the FDNY, including Jardin, since many of the self-certifications have been discovered to be fraudulent, and fires in self-certified buildings have led to the deaths of firefighters.

65. **Ending Practice of Meeting with Chiefs**. For nearly a year since she took office, from February 2022 to February 2023, Respondent Kavanagh held <u>no</u> meetings with the full group of Staff Chiefs, who serve as the FDNY's coterie of experts. This is entirely inconsistent with the practices of past Fire Commissioners who typically met with and consulted their chiefs on at least a monthly basis (and more frequently before COVID-19).

66. The Staff Chiefs raised their concerns with her decisions to Respondent Kavanagh and her staff, stating that, in their expert view, these decisions harmed public safety. Instead of taking the advice of her experienced Staff Chiefs, Respondent Kavanagh took their concerns as unjustifiable dissent.

V. **Respondent Kavanagh's Reassignment Campaign to Retaliate Over Expressions of Safety Concern**

67. To put the Staff Chiefs who dared to question her decisions in their place, Respondent Kavanagh began a pattern of abuse of power and retaliation. The first set of Retaliation Decisions were to reassign Assistant Chiefs and Deputy Assistant Chiefs to meaningless positions within the FDNY, and to strip them of their duties. Respondent Kavanagh ordered these reassignments in November 2022, less than a month after being installed as

18

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

18 of 36

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 20 of 37 PageID #: 23

RECEIVED NYSCEF: 02/27/2023

Commissioner, with one reassignment made even earlier, when she was still Acting Commissioner. In total, Respondent Kavanagh moved at least six Assistant Chiefs and Deputy Assistant Chiefs—out of a total of seventeen—to meaningless and made-up jobs with little to no responsibilities and reassigned a seventh out of his field of expertise. The reassignments were a bold-faced attempt by Respondent Kavanagh to force the Assistant Chiefs and Deputy Assistant Chiefs into retirement, as a member of Respondent Kavanagh's staff admitted.

68.     **Michael Gala:** On November 21, 2022, Gala was notified that he was being arbitrarily reassigned to work as "Chief Quartermaster." This was a fictitious title and a made-up job. The Quartermaster is the FDNY's outfitting department, providing firefighters with uniforms. It is run by a civilian outside vendor, staffed with FDNY civilian employees. There are no members of the uniformed division who work there. By making him "chief" quartermaster, overseeing no uniformed personnel and with no real role in managing the FDNY store, Respondent was quite openly trying to humiliate Chief Gala to compel him to retire. In fact, during the meeting in which Respondent Kavanagh's deputy, Lizette Christoff, informed Chief Gala of his reassignment, as soon as Chief Gala left the room, Christoff said words to the effect of: "He is going to retire." In other words, this was an unambiguous, and admitted, attempt at constructive discharge.

69.     **Joseph Jardin**: In or around August 2022, Jardin was abruptly removed from his role as Chief of Fire Prevention and moved him to a far smaller job in Operations at Fort Totten. This was an attempt to constructively discharge Chief Jardin.

70.     **Fred Schaaf**: On November 21, 2022, Chief Schaaf was unceremoniously removed from his position as Queens Borough Commander. He was given no clear role or responsibilities. This was an attempt to constructively discharge Chief Schaaf.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)       INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1                                                              RECEIVED NYSCEF: 02/27/2023

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 21 of 37 PageID #: 24

71. **Michael Massucci**: In November 2022, without explanation, Chief Massucci was informed of his reassignment to the Toolroom located in Long Island City with no responsibilities. This was an attempt to constructively discharge Chief Massucci.

72. **Kevin Brennan**: Brennan was reassigned twice, first in August 2022 when he was moved from his position as Assistant Chief of Fire Prevention to a role in Operations, and then again in November 2022, when he was sent to Fort Totten with no clear role or responsibilities. This was an attempt to constructively discharge Chief Brennan.

73. **Michael Meyers**: Also around this time, Meyers, a thirty-one year veteran of the FDNY, was removed from his role as Chief of Safety and reassigned to the Office of Emergency Management, an external city agency. This was an attempt to constructively discharge Chief Meyers.

74. **Frank Leeb**: Also in November 2022, Leeb was informed of his reassignment out of his position as acting Chief of Training.[30] Although he was reassigned as Chief of Safety, this meant that instead of being in line for a promotion to a three- or four-star chief as Chief of Training, he was passed over. Upon information and belief, the only reason he was moved out of his field of expertise, for which he is widely renowned as a national leader in firefighter training, was so that Respondent Kavanagh could reassign and retaliate against Chief Michael Meyers (noted above), who was very vocal about the SCBA project, and Respondent Kavanagh needed someone to take his job. Accordingly, this was an attempt to constructively discharge Chief Leeb.

---

[30] Leeb's reassignment is particularly concerning. He is recognized nationally and internally as a "training czar," whose demotion will have a cascading effect on the training that the FDNY firefighters receive, affecting not only the firefighters' readiness, but also the quality of the work they conduct while out in the field.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO.: 1

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 22 of 37 PageID #: 25

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 02/27/2023

## VI.    **Respondent Kavanagh Finally Calls a Meeting with Her Staff Chiefs**

75.    Because of Respondent Kavanagh's actions detailed above—including the decisions contrary to public safety and the retributive reassignment campaign—the FDNY was in severe disarray by the start of 2023.  On Friday, February 3, 2023, Respondent Kavanagh ordered that a Staff Chiefs meeting take place.  This would be Respondent Kavanagh's first, and only, meeting with all of the chiefs.  Three chiefs—Gala, Jardin, and Schaaf—were instructed not to attend.

76.    During the meeting, Respondent Kavanagh falsely disparaged her chiefs.  She accused them of "pestering her for promotions and personal cars."[31]  Respondent Kavanagh also noted that she had not been given updates about other issues such as a "pending critical situation around the purchase of new air respirators for firefighters."[32]  However, and as explained above, the "critical situation," concerning the purchase of new "air respirators" for firefighters was a creature of Respondent Kavanagh's making.

77.    During that same meeting, Respondent Kavanagh continued to berate the Staff Chiefs for not "thinking outside the box."[33]

78.    The Staff Chiefs sat in the meeting and tried to appease Respondent Kavanagh.  It soon became apparent, however, that the meeting was not an attempt by Respondent Kavanagh to seek out the advice and counsel of the Staff Chiefs or find an amenable path forward.  Instead, this

---

[31] Thomas Tracy, Michael Gartland, and Graham Rayman, "Two high-ranking FDNY chiefs surrender titles in protest after commissioner demotes three other chiefs in shake-up," N.Y. Daily News, Feb. 6, 2023, available at https://www.nydailynews.com/new-york/nyc-crime/ny-fdny-chiefs-shakeup-demotions-protest-laura-kavanaugh-20230206-uwzvmmskxbhvzav7ujd7tbt6ku-story.html.

[32] *Id*.

[33] *Id*.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 23 of 37 PageID #: 26

RECEIVED NYSCEF: 02/27/2023

meeting was a pretext for Respondent Kavanagh's next move—the demotions of Gala, Jardin, and Schaaf—which the rest of the Staff Chiefs did not yet know was coming, because Respondent Kavanagh did not tell them.

79.     Most concerningly, this sensitive meeting was secretly recorded and later leaked to the media.  On information and belief, it was Commissioner Kavanagh herself who approved the decision to leak the recording.

## VII.     Respondent Kavanagh Makes an Example of Gala, Jardin, and Schaaf by Demoting Them Without Consulting the Chief of Department

80.     On February 3, 2023, Assistant Chief Gala, Assistant Chief Jardin, and Assistant Chief Schaaf were instructed not to attend the Staff Chief meeting but were instead asked to meet with Respondent Kavanagh's chief of staff, Luis Martinez.  In those meetings, Martinez informed each Staff Chief that, effective March 4, 2023, they were being demoted to the rank of Deputy Chief—two ranks below their current rank.  These demotions were the second set of Retaliation Decisions, after Assistant Chiefs Gala, Jardin, and Schaaf remained at the Department after their reassignments.

81.     On the evening of February 3, Respondent Kavanagh ordered that Assistant Chief Gala, Assistant Chief Jardin, and Assistant Chief Schaaf be immediately removed from the Citywide command rotation, meaning they are no longer serving as Incident Commanders.

82.     Notably, Gala (62 years old), Jardin (61 years old), and Schaaf (60 years old), are the three oldest Staff Chiefs in the FDNY, and none were provided with any information or insight into the reasons for their demotions.

83.     Unable to force their retirement through humiliating reassignments, Respondent Kavanagh decided to twist the knife further and unceremoniously demoted these proud public

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

servants. She did so in violation of lawful procedure because she did not consult the Chief of Department as required in Chapter 5 of the FDNY Regulations.

84.     In fact, Respondent Kavanagh knew that the Chief of Department would have disagreed with the decision, had he been consulted.

85.     As the Staff Chiefs sat to discuss the bewildering meeting they had just completed with Respondent Kavanagh, one of the Staff Chiefs received word that Chief Jardin had been demoted. He told the rest of the meeting's participants, and the response from every other chief— including the Chief of Department and Chief of Operations—was surprise and shock. The Chief of Department and Chief of Operations stormed out of the room. They knew that if Chief Jardin had been demoted, the other two Staff Chiefs who were instructed not to attend the earlier meeting that day were also being demoted.

86.     Upon information and belief, the Chief of Department and Chief of Operations went directly to the Respondent Kavanagh. They asked her, in sum and substance, if it was true that she was demoting these three Staff Chiefs, and they asked why she was doing so without discussing it with them first. Respondent Kavanagh responded, in substance, by confirming that she was demoting Staff Chiefs, and said words to the effect of: "Had I said something to you in advance, you would have tried to talk me out of it." This was an admission that not only did Respondent Kavanagh not consult with the Chief of Department before demoting the Staff Chiefs, but she knew that the demotions would be against their advice. Thus, Respondent Kavanagh ignored her obligation under the FDNY Regulations to consult with the Chief of Department regarding Staff Chief appointments.

## VIII.    Other Staff Chiefs Suffered Constructive Demotions

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 02/27/2023

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 25 of 37 PageID #: 28

87.     No Staff Chief can remain in his or her position if the Commissioner is creating grave safety risks and preventing the Staff Chief from performing his or her job.  Based on the actions described above, Chief of Department John Hodgens and Chief of Operations John Esposito immediately asked for a reduction in rank to Deputy Chief.[34]  Petitioner Massucci did so as well, along with Deputy Assistant Chief Leeb and Assistant Chief Kevin Woods.[35]  They submitted paperwork and informed Respondent Kavanagh of the reality of the situation: they had been constructively demoted, and so they asked to be returned to the rank of Deputy Chief.  In addition, on information and belief, three more Staff Chiefs either orally requested a reduction in rank to Deputy Chief, or, because of planned medical leave, will soon be inactive and so did not yet request a reduction in rank.

88.     Indeed, in his submitted paperwork, Esposito stated that "the events of [the] last several weeks (including being excluded from discussions and the decision-making process on serious issues affecting the Bureau of Operations) make clear that Commissioner Kavanagh no longer has [] 'faith and trust' in me.  These events have resulted in a serious breach of trust with my subordinate personnel.  To ensure the Chiefs, Company Officers and Firefighters stay focused on the mission I can no longer remain as the Chief of Operations."  Massucci wrote in his letter to Respondent Kavanagh:  "My reassignment to the Bureau of Operations and placing me in the toolroom in the Bureau of Tech Services was an attempt to humiliate and disgrace me amongst my

---

[34] Joe Marino, Larry Celona, and Jorge Fitz-Gibbon, "FDNY turmoil spreads as another chief asks to give up rank after commish's shake-up," N.Y. Post, Feb. 8, 2023, available at https://nypost.com/2023/02/08/fdny-turmoil-continues-to-spread-with-another-chief-giving-up-rank/.

[35] Susan Nicol, "Two More FDNY Deputy Chiefs Follow Suit, Ask to Return to Previous Assignments," Firehouse.com, Feb. 9, 2023, available at https://www.firehouse.com/careers-education/news/21295221/fdny-deputy-chiefs-frank-leeb-kevin-woods-latest-to-step-aside-after-leadership-turmoil.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO: 1

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 02/27/2023

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 26 of 37 PageID #: 29

superiors, subordinates, coworkers and friends. Stating later that my skillsets were being better utilized in my new position was yet another attempt to further disgrace me. The lack of transparency and the lack of truthfulness, not only with me but with the entire Uniformed Executive Staff, has brought me to this decision. I can no longer function as a Deputy Assistant Chief under your administration."

89.     On information and belief, Respondent Kavanagh's actions have also crippled the FDNY's ability to even find replacement Staff Chiefs. On information and belief, offers to some candidates to ascend to the (now open) Staff Chief position have been rejected.

90.     With these demotions set to take effect soon (March 4 and March 6, 2023), the FDNY will be left with an unimaginable level of unpreparedness to respond to and command fires of three alarms or more. What's more, qualified candidates do not want to take the job because they cannot ensure public safety in the current environment.

## IX.     In Response to Public Backlash, Respondent Kavanagh has Focused Her Efforts on a Smear Campaign

91.     As the Staff Chiefs voice disagreement with Respondent Kavanagh's decisions, she is continuing to act as a political operative, not a safety professional. Attempting to smear the victims, on information and belief, Respondent Kavanagh is retaliating and engaging in a pattern of retribution, punishment, and abuse of power by smearing them in the press. This is Respondent Kavanagh's third set of Retaliation Decisions.

92.     Numerous examples attest to this campaign. Each of these smears is provably false.

a.     On February 6, 2023, the New York Daily News quoted anonymous sources calling Gala, Jardin, and Schaaf "bad apples." The Daily News article further alleged that (1) Schaaf "resisted transferring and disciplining some firefighters" when "allegations of racism" were made in a Queens firehouse; (2) Jardin was the subject

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)        INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1                                                          RECEIVED NYSCEF: 02/27/2023

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 27 of 37 PageID #: 30

of "a series of complaints with the city's Office of Equal Employment Opportunity"

for his "tough-guy management style"; and (3) Gala was considered a "divisive

element in the department."[36]

    b.  On February 6, 2023, the New York Post quoted a high-ranking department source

who said that Gala, Jardin, and Schaaf were demoted in part because of how they

mistreat and "undermine their counterparts."[37]

    c.  On February 6, 2023, the Chief Leader quoted a longtime FDNY member who

alleged that Jardin had "wreaked havoc" on the FDNY's fire prevention division

and was seen as a "racist who would pass up non-white and female employees for

promotions."[38]

    d.  On February 11, 2023, the New York Daily News quoted a source familiar with

Respondent Kavanagh's thinking who claimed Gala, Jardin, and Schaaf "had

several complaints filed against them."[39]

93.    On information and belief, Respondent either made or authorized each of these acts

of slander against Petitioners.

---

[36] Thomas Tracy, Michael Gartland, and Graham Rayman, "Two high-ranking FDNY chiefs surrender titles in protest after commissioner demotes three other chiefs in shake-up," N.Y. Daily News, Feb. 6, 2023, available at https://www.nydailynews.com/new-york/nyc-crime/ny-fdny-chiefs-shakeup-demotions-protest-laura-kavanaugh-20230206-uwzvmmskxbhvzav7ujd7tbt6ku-story.html.

[37] Larry Celona, Tina Moore, Joe Marino, and Jorge Fitz-Gibbon, "FDNY ranks in 'turmoil' after commissioner demotes chiefs, high ranking officials step down," N.Y. Post, Feb. 6, 2023, available at https://nypost.com/2023/02/06/all-hell-breaks-loose-at-fdny-as-commish-demotes-chiefs/.

[38] Duncan Freeman, "Two top FDNY chiefs resign," The Chief Leader, Feb. 6, 2023, available at https://thechiefleader.com/stories/two-top-fdny-chiefs-resign,49759.

[39] Thomas Tracy, "FDNY Commissioner Laura Kavanagh's request for 'out of the box thinking' sparked demotion drama: Exclusive," N.Y. Daily News, Feb. 11, 2023, available at https://www.nydailynews.com/new-york/ny-fdny-commissioner-laura-kavanagh-demotions-recordings-20230211-vtwxkhddyjgfhpcutzytvl6t2u-story.html.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

94.     Additionally, on information and belief, the sensitive February 3, 2023 meeting was secretly recorded and was subsequently leaked.[40]  On information and belief, it was leaked in order to disparage the Petitioners-Plaintiffs, and it was Commissioner Kavanagh herself who approved the decision to leak the recording.

**X.     Judicial Intervention is Necessary to Protect the Public**

95.     As a result of Respondent Kavanagh's actions and her systematic gutting of the FDNY, it is clear the FDNY has crossed a tipping point and its structure is unraveling.  If the demotions of Gala, Jardin, and Schaaf go into effect on March 4, 2023, there will be a complete lack of preparedness when the additional demotions go into effect on March 6, 2023.

96.     As discussed above, the Staff Chiefs provide crucial leadership and operational control at the scene of 3- to 5-alarm fires.  As fires increase in severity, more senior leadership is needed to preserve life and property.  Beginning March 6, 2023, when the constructive demotions go into effect, there will be no remaining Staff Chiefs with experience as Incident Commanders for 5-alarm fires; there will be only three Chiefs with some possible experience as Incident Commanders for 4-alarm fires; and there will be only seven Chiefs with experience as the Incident Commander for 3-alarm fires.

97.     As a result, judicial intervention is required.  Without the Court stopping these demotions, there is an abundantly clear risk to public safety.  People will die, people will be injured, and property will be destroyed.  As the president of the Uniformed Fire Officers Association, James McCarthy, noted, "the biggest impact [of the demotions] is on the safety of the

---

[40] *Id.*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 29 of 37 PageID #: 32

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 02/27/2023

people of New York City. . . . These are the people that come when a fire gets out of hand and cover the logistics and this is going to impact the way we protect the life and property of the city."[41]

98.     If this Court stops the demotions from going into effect on March 4, 2023, and March 6, 2023, and preserves the status quo, the FDNY will retain the requisite experience at the top of its ranks and public safety will be preserved.  But once these demotions go into effect, the FDNY will be rendered unable to keep the city safe.

## FOR A FIRST CAUSE OF ACTION
**(For an Order Pursuant to Article 78 of the CPLR Compelling Commissioner Kavanagh to Stop the Involuntary Demotions and Reverse the Retaliation Decisions)**

99.     Petitioners-Plaintiffs repeat and re-allege each and every allegation set forth in the paragraphs above.

100.     Respondent Kavanagh's Retaliation Decisions are arbitrary, capricious, irrational, an abuse of discretion, and in violation of lawful procedure in the following ways, each of which is an independent basis to overturn the involuntary demotions and preserve the status quo:

101.     *First*, the Retaliation Decisions, including the involuntary demotions, created a state in which the FDNY cannot adequately respond to the city's largest and most dangerous fires, which causes grave risk to the health and safety of FDNY personnel and city residents.  Respondent Kavanagh's Retaliation Decisions included the demotions of three Staff Chiefs and caused the constructive demotions of at least five other Staff Chiefs, and upon information and belief eight other Staff Chiefs, leaving the entire city and all responding firefighters at risk.

---

[41] Thomas Tracy, Michael Gartland, and Graham Rayman, "Two high-ranking FDNY chiefs surrender titles in protest after commissioner demotes three other chiefs in shake-up," N.Y. Daily News, Feb. 6, 2023, available at https://www.nydailynews.com/new-york/nyc-crime/ny-fdny-chiefs-shakeup-demotions-protest-laura-kavanaugh-20230206-uwzvmmskxbhvzav7ujd7tbt6ku-story.html.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 02/27/2023

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 30 of 37 PageID #: 33

102.  *Second*, Respondent Kavanagh's decision to remove the appointment of Chiefs Gala, Jardin, and Schaaf without consulting the Chief of Department—and, in fact, with knowledge that if he had been consulted, he would have insisted against it—was a violation of lawful procedure pursuant to the FDNY Regulations, Chapter 5.

103.  *Third*, Respondent Kavanagh's actions in attempting to constructively discharge the Staff Chiefs, to retaliate against them, and to stigmatize them, were all unlawful acts that were arbitrary and capricious, and an abuse of discretion.

104.  Petitioners-Plaintiffs have no adequate remedy at law.

105.  Petitioners-Plaintiffs are entitled to an order pursuant to Article 78 compelling Respondents-Defendants to stop the involuntary demotions and maintain the status quo.

## FOR A SECOND CAUSE OF ACTION
### (For an Order Pursuant to 42 U.S.C. § 1983 and the United States and New York Constitutions Granting a Name-Clearing Hearing for Gala, Jardin, Schaff, and Massucci for Due Process Violations)

106.  Petitioners-Plaintiffs repeat and re-allege each and every allegation set forth in the paragraphs above.

107.  Respondents-Defendants' smear campaign has significantly damaged Petitioners-Plaintiffs' reputations, which in conjunction with their unjustified demotions and constructive demotions, flagrantly infringes on Petitioners-Plaintiffs' protected liberty interests under the Due Process Clause of the United States Constitution and the New York State Constitution.

108.  *First*, the inflammatory statements by Respondent Kavanagh and others at the FDNY have branded Petitioners-Plaintiffs with a stigma, damaging the reputations they have built over decades of public service.

29

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 02/27/2023

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 31 of 37 PageID #: 34

109.     These public statements by Respondent Kavanagh and others at the FDNY have caused significant harm to Petitioners-Plaintiffs' honor and integrity and seriously called into question their professional competence.

110.     Respondent Kavanagh and others at the FDNY have, for example, called them racists, discriminatory, and "bad apples."

111.     These statements made by Respondent Kavanagh and others at the FDNY are false and capable of being proved false.

112.     *Second*, Respondents-Defendants have materially altered Petitioners-Plaintiffs' status, rights, and tangible interests as government employees by demoting them from their high-ranking FDNY positions, or by constructively demoting them.

113.     These acts by Respondents-Defendants were performed in their official capacities under the color of law.

114.     Petitioners-Plaintiffs' demotions and constructive demotions, in conjunction with Respondents-Defendants defamatory statements made contemporaneously with the demotions, tangibly infringe on their protected liberty interests and constitute a due process violation.

115.     Petitioners-Plaintiffs have no adequate remedy at law.

116.     Petitioners-Plaintiffs are entitled to an order declaring that their civil rights have been violated and granting them a name-clearing hearing.

117.     Petitioner-Plaintiffs are also entitled to attorney's fees, costs, and expert fees pursuant to, for example, 42 U.S.C. § 1988, CPLR Chapter 86, and other applicable laws.

### **RELIEF REQUESTED**

118.     WHEREFORE, Petitioners-Plaintiffs respectfully request that this Court enter an order granting the relief set forth below:

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1                                                          RECEIVED NYSCEF: 02/27/2023

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 32 of 37 PageID #: 35

119.    Directing that Respondents-Defendants stop the involuntary demotions of Jardin, Gala, and Schaaf, and reinstate the Staff Chiefs who were actually demoted or who were constructively demoted;

120.    Directing the Respondents-Defendants to reverse the reassignment of Petitioners-Plaintiffs Gala, Jardin, Schaaf, and Massucci;

121.    Declaring that Respondents-Defendants violated the Petitioners-Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983;

122.    Directing that Respondents-Defendants grant Gala, Jardin, Schaaf, and Massucci a name-clearing hearing for due process violations;

123.    Enjoining Respondent-Defendants and those in active concert with Respondents-Defendants from publishing any further defamatory statements concerning Petitioners-Plaintiffs;

124.    Finding that Respondents-Defendants unlawfully retaliated against Petitioners-Plaintiffs for voicing disagreement with Respondent Kavanagh's actions;

125.    Awarding damages to Petitioners-Plaintiffs, in an amount to be determined at trial, to make Petitioners-Plaintiffs whole for any losses suffered as a result of Respondents-Defendants' actions;

126.    Awarding Plaintiffs-Petitioners punitive damages, as applicable, for Respondents-Defendants' willful and wanton disregard of their rights;

127.    Awarding to Petitioners-Plaintiffs costs, legal fees, and expert fees incurred in connection with bringing this action and proceeding; and

128.    Granting such other relief as this Court deems just and proper.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:23-cv-01543-NRM-RER  Document 1-1  Filed 02/28/23  Page 33 of 37 PageID #: 36

Dated: February 27, 2023                    **WALDEN MACHT & HARAN LLP**

New York, New York                   BY:

                                     _Jim Walden_____

                                     Jim Walden
                                     Georgia Winston
                                     Adam Cohen

                                     250 Vesey Street, 27th Floor
                                     New York, New York 10281
                                     (212) 335-2030

32

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

In the Matter of the Application of

MICHAEL GALA,
JOSEPH JARDIN,
MICHAEL MASSUCCI, and
FRED SCHAAF,

       Petitioners-Plaintiffs,

For a Judgment pursuant to Article 78 of the Civil
Practice Law and Rules,

    -against-

LAURA KAVANAGH, as Commissioner of the
New York City Fire Department, and the NEW
YORK CITY FIRE DEPARTMENT,

       Respondents-Defendants.

Index No.

_____

Assigned to Justice

_____

**VERIFICATION**

STATE OF NEW YORK    )

          )   ss:

COUNTY OF KINGS    )

   Michael Gala, being duly sworn, states that he has read the foregoing Petition and knows
the contents thereof; that the same is true to his own knowledge, except as to matters therein that
are stated upon information and belief, and as to those matters, he believes them to be true.

              _____

               Michael Gala

Sworn to before me this
_27th day of February, 2023

2

Registration No. 01LA0001373
County: New York
Valid from 02/13/2023 to 02/13/2027

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

In the Matter of the Application of

MICHAEL GALA,
JOSEPH JARDIN,
MICHAEL MASSUCCI, and
FRED SCHAAF,

                    Petitioners-Plaintiffs,

For a Judgment pursuant to Article 78 of the Civil
Practice Law and Rules,

              -against-

LAURA KAVANAGH, as Commissioner of the
New York City Fire Department, and the NEW
YORK CITY FIRE DEPARTMENT,

                 Respondents-Defendants.

Index No. _____

Assigned to Justice _____

**VERIFICATION**

STATE OF FLORIDA       )
                       )   ss:
COUNTY OF PALM BEACH  )

Joseph Jardin, being duly sworn, states that he has read the foregoing Petition and knows

the contents thereof; that the same is true to his own knowledge, except as to matters therein that

are stated upon information and belief, and as to those matters, he believes them to be true.

_____
Joseph Jardin

Sworn to before me this
27th day of February, 2023

_____



Jose M Alvarez
Comm. # GG909436
Expires: Sept. 28, 2023
Bonded Thru Aaron Notary

1

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

34 of 36

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1

Case 1:23-cv-01543-NRM-RER   Document 1-1   Filed 02/28/23   Page 36 of 37 PageID #: 39

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 02/27/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

In the Matter of the Application of

MICHAEL GALA,
JOSEPH JARDIN,
MICHAEL MASSUCCI, and
FRED SCHAAF,

                                Petitioners-Plaintiffs,

For a Judgment pursuant to Article 78 of the Civil
Practice Law and Rules,

        -against-

LAURA KAVANAGH, as Commissioner of the
New York City Fire Department, and the NEW
YORK CITY FIRE DEPARTMENT,

                              Respondents-Defendants.

Index No. _____

Assigned to Justice _____

**VERIFICATION**

STATE OF NEW YORK    )
                           )    ss:
COUNTY OF QUEENS    )

       Michael Masucci, being duly sworn, states that he has read the foregoing Petition and

knows the contents thereof; that the same is true to his own knowledge, except as to matters

therein that are stated upon information and belief, and as to those matters, he believes them to

be true.

                                            Michael Masucci

Sworn to before me this
27 th day of February, 2023

SAVANNAH LARSON
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01LA6443264
Qualified in New York County
Commission Expires Oct. 31, 2026

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

In the Matter of the Application of

MICHAEL GALA,
JOSEPH JARDIN,
MICHAEL MASSUCCI, and
FRED SCHAAF,

                Petitioners-Plaintiffs,

For a Judgment pursuant to Article 78 of the Civil
Practice Law and Rules,

           -against-

LAURA KAVANAGH, as Commissioner of the
New York City Fire Department, and the NEW
YORK CITY FIRE DEPARTMENT,

             Respondents-Defendants.

Index No. _____

Assigned to Justice _____

**VERIFICATION**

STATE OF NEW YORK   )
                ) ss:
COUNTY OF SUFFOLK  )

     Fred Schaaf, being duly sworn, states that he has read the foregoing Petition and knows

the contents thereof; that the same is true to his own knowledge, except as to matters therein that

are stated upon information and belief, and as to those matters, he believes them to be true.

                                 Fred Schaaf

Sworn to before me this
27 th day of February, 2023

Registration No. 01LA0001373
County: New York
Valid from 02 13 2023 to 02 13 2027

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.