UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MICHAEL GALA, JOSEPH JARDIN,
MICHAEL MASSUCCI, and FRED SCHAAF,

                Plaintiffs,             **MEMORANDUM AND ORDER**
                                                 23-CV-1543 (NRM) (RER)
     v.

LAURA KAVANAGH, as Commissioner of the
New York City Fire Department, and the
NEW YORK CITY FIRE DEPARTMENT,

                Defendants.
----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge, Part I:

        Plaintiffs are high-level officials at the New York City Fire Department ("FDNY") who were recently demoted or reassigned. Plaintiffs Michael Gala, Joseph Jardin, and Fred Schaaf, who held the post of Assistant Chief at FDNY, were demoted two ranks by defendant FDNY Commissioner Laura Kavanagh on February 3, 2023. They were relieved of their duties as Incident Commanders—FDNY's term for "commanding officers" in charge of "any fire that requires three alarms or more"—immediately, with the official demotions (and the associated changes to rank and salary) scheduled to take effect this coming Saturday, March 4, 2023. *See* Compl. ¶¶ 11–13, 29, 80–81 (Dkt. #1-1). Plaintiff Michael Massucci, meanwhile, was a Deputy Assistant Chief, and alleges that in November 2022 he was constructively demoted because he was reassigned from his role as Chief of Uniformed Personnel to a post in the "'Toolroom' . . . with no clear role or responsibilities." *Id.* at ¶¶ 14, 71.

        On February 27, 2023, plaintiffs filed a lawsuit challenging these personnel actions in New York Supreme Court, Kings County. The lawsuit contends, first, that plaintiffs are entitled to an order under Article 78 of the New York Civil Practice Laws and Rules, N.Y. C.P.L.R. § 7801 *et*

*seq.*, compelling their reinstatement to their former positions and responsibilities, because those decisions were arbitrary, capricious, irrational, an abuse of discretion, and violated departmental procedures, *see* N.Y. C.P.L.R. § 7803(3).  Second, the lawsuit contends that because defendants made statements about plaintiffs that damaged their reputations in connection with the challenged personnel decisions, plaintiffs are entitled under 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to a name-clearing hearing and a declaration that their constitutional rights have been violated.  *See* Compl. ¶¶ 99–117.

At the same time they filed their lawsuit, plaintiffs requested emergency relief in the form of a temporary restraining order ("TRO") that would stop the formal demotions of Gala, Jardin, and Schaaf from going into effect on March 4 and require the Commissioner to restore plaintiffs to their previously held duties.  *See* State Ct. Mot. for Temporary Restraining Order (Dkt. #1-2). The same day, defendants removed the case to federal court.  *See* Not. of Removal (Dkt. #1). Plaintiffs then again moved for a TRO in this Court, while also requesting that after granting the desired preliminary relief, the Court remand the case back to state court.  *See* Pls.' Mot. for Temporary Restraining Order and Remand 1 (Dkt. #3) ("Pls.' Mot."); Proposed Temporary Restraining Order & Remand Order (Dkt. #3-1) ("Proposed TRO").

## DISCUSSION

While this Court has jurisdiction to adjudicate plaintiffs' request for a TRO, plaintiffs have not made the stringent showing needed to obtain an emergency injunction that immediately restores them to their former duties and prohibits their demotions.  Accordingly, plaintiffs' request is denied.

## I. The Court Has Jurisdiction to Adjudicate This TRO Application

The Court has subject-matter jurisdiction to adjudicate plaintiffs' application for emergency relief. In general, unless federal law provides otherwise, a defendant may remove to federal district court a lawsuit that was filed in state court, if the federal district court would have had original jurisdiction over the lawsuit in question. *See* 28 U.S.C. § 1441(a). That principle applies here. Federal district courts have original jurisdiction over lawsuits that include federal claims, *see* 28 U.S.C. § 1331, as plaintiffs' lawsuit concededly does. *See* Pls.' Mot. 2. When a suit containing both federal and state claims is removed to federal court, the federal court may exercise supplemental jurisdiction over state claims if those claims "are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Again, that standard is satisfied: plaintiffs make no argument that their Section 1983 claim—which concerns the stigmatizing effect of an alleged "smear campaign" engaged in by the Commissioner "in conjunction with [plaintiffs'] unjustified demotions and constructive demotions," Compl. ¶ 107—is unrelated to their Article 78 claim for reinstatement. Nor is jurisdiction over the Article 78 claim proscribed either by the limits set out in Section 1367(b) or "otherwise by Federal statute." 28 U.S.C. § 1367(a). When those requirements are met, "a federal court has jurisdiction over [the] *entire action*, including state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (emphasis added). Accordingly, with all the requirements of Section 1367(a) satisfied, the Court has supplemental jurisdiction over the state-law claims in plaintiffs' lawsuit and may adjudicate the TRO request based on those claims.

The Court declines at this time to remand this case based on a series of cases in this Circuit indicating that "federal courts are loath to exercise jurisdiction over Article 78 claims." *Morningside Supermarket Corp. v. New York State Dep't of Health*, 432 F. Supp. 2d 334, 346

(S.D.N.Y. 2006). Most of these cases decline to exercise supplemental jurisdiction over Article 78 claims as a matter of the discretion conferred by Section 1367(c), which permits district courts to "decline to exercise supplemental jurisdiction over a claim" otherwise covered under Section 1367(a) if (among other reasons) there are "compelling reasons" for doing so. 28 U.S.C. § 1367(c)(4). Courts in this Circuit appear to be "essentially unanimous" that "[t]he very nature of an Article 78 proceeding presents such compelling reasons." *Morningside Supermarket*, 432 F. Supp. 2d at 346–47. But on the unusual circumstances presented here, compelling reasons do not justify a remand before the Court acts on plaintiffs' TRO request. Both parties ask the Court to decide the TRO motion. *See Cartagena v. City of New York,* 345 F. Supp. 2d 414, 426 (S.D.N.Y. 2004) (exercising supplemental jurisdiction over an Article 78 claim where the parties "unequivocally agreed, in the unusual circumstances of this case, to the submission of the Article 78 claim to th[e] Court"). And plaintiffs claim that irreparable harm will occur if the Commissioner is not enjoined from carrying out their demotions on March 4, so time is of the essence. Accordingly, the Court declines to remand plaintiffs' case before deciding the TRO request, but defers decision on plaintiffs' request that the case be remanded afterward.

## II.    Plaintiffs' Motion for a Temporary Restraining Order Is Denied

Plaintiffs' motion for a TRO is denied.

### A.  *Legal Standard*

A TRO is an "extraordinary and drastic remedy," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted), the purpose of which is "to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction," *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d

Cir. 1989) (quoting *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n*, 306 F.2d 840, 842–43 (2d Cir. 1962)).

To obtain this emergency relief, a party must demonstrate the "(1) a likelihood of success on the ultimate merits of the lawsuit; (2) a likelihood that the moving party will suffer irreparable harm if a TRO is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the relief granted." *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (citing *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015)).[*] The "most important" of these four requirements is irreparable harm. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Courts consider harm "irreparable" when it "cannot be remedied after a final adjudication." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010).

B. *Application*

Plaintiffs have not established that irreparable harm will occur if the Court does not immediately require plaintiffs to be restored to their previously held duties and prevent their formal demotions from going into effect.

Plaintiffs have not even alleged in their TRO application that they themselves will suffer irreparable harm as a result of their demotions. That is unsurprising. As a general matter, the harms that attend a termination of employment (or, as here, demotion) can be remedied through

---

[*] An even stronger showing on the merits is generally needed when a litigant seeks a "mandatory" injunction to command some positive act that will alter the status quo. *See D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006); *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36–37 (2d Cir. 2018). In such cases, the movant must demonstrate a "clear or substantial likelihood of success on merits." *N. Am. Soccer League*, 883 F.3d at 37 (citations omitted). The parties dispute whether the injunction that plaintiffs seek would alter the status quo or merely restore it. *Compare* Pls.' Mot. 10 (arguing that the injunctive relief they seek "would merely preserve the status quo by maintaining [plaintiffs'] current positions and operational duties"), *with* Defs.' Opp'n to Mot. for Temporary Restraining Order 7 (Dkt. #6) ("Defs.' Opp'n") (arguing that because plaintiffs seek "restoration to the[] incident command duties" they lost "when their demotions were announced one month ago," that injunction "would alter, rather than maintain the status quo"). I need not resolve that dispute, because plaintiffs' are not entitled to a TRO under either standard.

5

money damages, reinstatement, or both at the end of a case. *Ahmad v. Long Island Univ.*, 18 F. Supp. 2d 245, 248 (E.D.N.Y. 1998) (citing *Sampson v. Murray*, 415 U.S. 61, 89–92 (1974)).

Plaintiffs instead argue that they are entitled to a TRO because the challenged actions will "hamper the Department's ability to adequately command the response to major fires, putting lives at risk." Pls.' Mot. 6. It is far from clear that a plaintiff may obtain a TRO without showing that he himself will suffer irreparable harm without judicial intervention, given that the Supreme Court has stated that "[a] plaintiff seeking a preliminary injunction must establish . . . that *he* is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (emphasis added); *see also* 11A C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.).

But even assuming that plaintiffs can obtain a TRO based on a showing of irreparable harm to others, the standard is stringent: "a *likelihood* of irreparable injury—not just a possibility." *Winter*, 555 U.S. at 21. In other words, plaintiffs must show irreparable harm that is "actual and imminent." *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (quoting *Tom Doherty Assocs. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995)). Plaintiffs have not made that showing.

Plaintiffs suggest that their demotions create a likelihood of irreparable injury to the public by leaving FDNY with an inadequate number of Staff Chiefs available to respond to serious fires. Specifically, they contend that by demoting plaintiffs and additional commanders who are not parties to this lawsuit, the Commissioner has "gut[ted] the ranks of Chiefs who can coordinate responses to 3-alarm fires." Pls.' Mot. 7–8. But there is no dispute that the changes to plaintiffs' work duties at issue in this case—the stripping of their Incident Commander responsibilities—had occurred by February 3, 2023. *See* Compl. ¶¶ 80–81. Just days later, according to an affidavit of Acting First Deputy Commissioner Lizette Christoff, "there were two promotions into the Staff

Chief ranks . . . resulting in the overall Staff Chief headcount being minimally impacted by the impending demotions of Plaintiffs Gala, Jardin, and Schaff." Aff. of Lizette Christoff ¶ 7 (Dkt. #6-1) ("Christoff Aff."). Moreover, Christoff attests that the 21 fires rated two-alarm or higher that occurred in February were all "fully staffed," even though plaintiffs had been removed from the Incident-Commander pool. *Id.* at ¶ 6. Given these facts, plaintiffs cannot show that the changes to their work duties, completed approximately a month ago, have left the FDNY command ranks understaffed—let alone so understaffed as to create a likelihood of irreparable harm to the public.

Plaintiffs protest that the full impact of their demotions will only be felt in connection with demotions of other individuals that plaintiffs represent will occur this month. *See* Pls.' Reply in Support of Mot. for Temporary Restraining Order and Remand 2 (Dkt. #7) ("Pls.' Reply"); Compl. ¶¶ 89, 96. But on that point, Deputy Commissioner Christoff states that FDNY "will continue to promote staff chiefs as necessary to maintain appropriate staffing levels." Christoff Aff. ¶ 8. And the only evidence in the record on this point indicates that those promoted into the Staff-Chief ranks are highly experienced. While the 23 existing Staff Chiefs (including plaintiffs) have an average of 33.25 years of service with FDNY, the individuals in the rank below them (who could be promoted to Staff Chief) have an average of 30.68 years of FDNY service. *Id.* at ¶ 9. Moreover, under the FDNY's command structure, "when an individual is promoted from Deputy Chief to Staff Chief, there is no additional incident command or firematics training received upon promotion"—a strong indication that the experience Deputy Chiefs obtain through their work responsibilities is appropriate training for a Staff-Chief post. *Ibid.* Given the evidence that vacancies in the FDNY command structure will be filled by highly experienced Deputy Chiefs, plaintiffs have not established a likelihood of irreparable harm to the public from their demotions—even in conjunction with other personnel changes.

7

Plaintiffs fare no better in suggesting that a likelihood of irreparable harm exists because, after plaintiffs' demotions, an inadequate number of individuals have experience responding to four- and five-alarm fires. Under FDNY's command structure, the Chief of Department serves as Incident Commander for five-alarm fires unless unavailable; the Chief of Operations does the same for four-alarm fires. *See* Aff. of Thomas Richardson ¶ 35(a)–(b) (Dkt. #3-3) ("Richardson Aff."). Plaintiffs allege that these two top departmental officials—who are not themselves plaintiffs—were "constructively demoted" by Commissioner to the rank of Deputy Chief as a result of plaintiffs' actual demotions. *See id.* at ¶ 33 (alleging that plaintiffs' demotions left the Chief of Department and Chief of Operations "unable to perform their responsibilities safely and in compliance with their oaths of office," such that the Commissioner "effectively demoted them as well"). They further allege that as a cumulative result of the Commissioner's personnel changes, there will be "no remaining Chiefs with experience as Incident Commanders for 5-alarm fires" and "only three chiefs with possible experience as Incident Commanders for 4-alarm fires." *Id.* at ¶ 36(a)–(b).

These allegations do not suggest that plaintiffs' own demotions—the actions challenged in this lawsuit—create a likelihood of irreparable harm by leaving the department with officials lacking experience in responding to the most serious fires. Again, none of the plaintiffs hold the FDNY positions—Chief of Department and Chief of Operations—that correspond to leadership at four- or five- alarm fires. Indeed, no plaintiff has alleged that he has served as Incident Commander for such a fire. Moreover, plaintiffs have not established that the departure or demotion of officials with experience commanding four- or five- alarm fires creates a likelihood of irreparable harm to the public. The experience of an incumbent Chief of Department and Chief of Operations is undoubtedly valuable. But the evidence in the record to date indicates that the

8

pool of Staff Chiefs and of Deputy Chiefs eligible for promotion consists of extremely experienced firefighters. Christoff Aff. ¶ 9. The record does not establish that those firefighters lack the training or experience needed before being promoted to an even more senior role—let alone that those firefighters are so lacking in training or experience that their serving as Incident Commanders at four- or five-alarm fires poses a likelihood of irreparable harm to the public.

In sum, on this TRO record, plaintiffs' "theory of future injury" based on harm to the public "is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending,'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013), and they are not entitled to a TRO.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for a TRO is denied. The Court defers decision on plaintiffs' motion to remand.

SO ORDERED.

                                                /s/ Rachel Kovner
                                                RACHEL P. KOVNER
                                                United States District Judge
                                                Part I

Dated: March 2, 2023
       Brooklyn, New York